IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA,

           Plaintiff,

v.                                    CRIMINAL ACTION NO. 2:12-cr-00030

MARVIN GARRETT,

           Defendant.

**MEMORANDUM OPINION AND ORDER**

*I.     SUMMARY OF RULINGS*

Pending before the Court are five motions filed by Defendant: a first and a second motion in limine [Docket 19, 40]; a motion for a gag order and change of venue [Docket 18]; a motion for advanced notice of destructive testing of firearms [Docket 20]; and a motion for additional discovery. The United States filed responses to each of these motions (Docket 45-49). On May 3, 2012, the Court conducted a hearing to address these motions. For the reasons stated at the May 3, 2012, hearing and as set forth below, the Defendant's motions are resolved as follows:

As to Defendant's first motion in limine [Docket 19], the Court: **DENIES AS MOOT** the motion insofar as it seeks exclusion at trial of the details of Defendant's prior convictions offered by the prosecution as substantive evidence; however, the Court **DEFERS** until trial a ruling on whether the prosecution may use such evidence as impeachment evidence on cross-examination of Defendant; **DENIES** the motion insofar as it seeks discovery of police interview notes of LaToya

Brown; **DENIES AS MOOT** the motion insofar as it seeks exclusion of: (1) evidence of crack cocaine found in a bag of frozen broccoli; (2) evidence that Defendant made statements regarding his involvement in an unrelated sexual assault case; (3) lay opinion testimony by law enforcement agents; (4) police reports; and (5) evidence that Defendant was designated by police as an "A-Lister" or was a target of the West Side Marketing Initiative; and **DEFERS** until trial the motion insofar as it relates to the prosecution's use of the booking photo of Defendant and any post-arrest statements made by Defendant during questioning by the police about an unrelated murder case.

As to Defendant's second motion in limine [Docket 40], the Court: **DENIES** the motion insofar as it relates to the prosecution's characterization of Defendant's act of climbing out of a bedroom window as attempted flight from the police; and **DENIES AS MOOT** the motion insofar as it relates to discovery of police interview notes of LaToya Brown.

Further, the Court **DENIES AS MOOT** Defendant's motion for a gag order [Docket 18], **DEFERS** a ruling on Defendant's motion for change of venue until voir dire [Docket 18], **DENIES AS MOOT** Defendant's motion for advance notice of destructive testing of firearms[1] [Docket 20]; and **DENIES AS MOOT** Defendant's motion for additional discovery [Docket 41].

Finally, at the May 3, 2012, hearing the Court took two of Defendant's motions under advisement. For the reasons that follow, the Court **DENIES** Defendant's first motion in limine [Docket 19] insofar as it seeks suppression of evidence pursuant to Federal Rule of Evidence

---

1 At the May 3, 2012, hearing the Court heard argument on the issue of whether Defendant would be entitled to a spoliation jury instruction due to the fact that law enforcement undertook destructive testing of the firearms while Defendant's motion for advanced notice of destructive testing was pending before the Court. Prior to trial, Defendant may file a proposed spoliation or adverse inference instruction, and the United States may file any objections thereto, to aid the Court in its ruling on this issue.

404(b) of the police informant's alleged prior drug deals with Defendant; and **DENIES** Defendant's second motion in limine insofar as it seeks exclusion of audiotape and videotape recordings of the informant's alleged January 18, 2012, interactions with Defendant [Docket 40].

## II.     BACKGROUND

On March 28, 2012, a federal grand jury returned a two-count superseding indictment against Defendant.  Count One alleges that on or about July 24, 2011, Defendant, a convicted felon, possessed three handguns, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e).  Count Two alleges that on or about January 18, 2012, Defendant distributed cocaine base in violation of 21 U.S.C. § 841(a)(1).

The factual basis for Count One arises from evidence obtained by police following a 911 call from Defendant's former girlfriend, LaToya Brown.  As alleged in pre-trial filings, Ms. Brown called 911 on the afternoon of July 24, 2011, claiming that Defendant had threatened her with a gun in the couple's home on 1020 Temple Street in Charleston, West Virginia.  Officers from the Charleston Police Department, Criminal Investigation Division responded to the Temple Street residence.  Shortly after their arrival, they apprehended Defendant as he was climbing out of a bedroom window.  Officers located one firearm under a mattress that was in the couple's bedroom and two more firearms in the bedroom closet.  Defendant was arrested and charged in state court.

The factual basis for Count Two concerns a controlled drug buy made by a police informant, Angel Ann Cummings, approximately six months after the incident with Ms. Brown.  As alleged, on January 18, 2012, Ms. Cummings made a controlled purchase of crack cocaine from Defendant.  The telephone call setting up the buy was tape-recorded (audio only).  Ms.

3

Cummings called an individual alleged to be Defendant. The two briefly discussed and agreed upon a meeting place for the drug deal. For the actual drug buy, police officers outfitted Ms. Cummings with a video and audio recording device. Ms. Cummings then left the officers, walked a few blocks, met with an individual alleged to be Defendant, and purchased a quantity of crack cocaine. She then returned to the police officers' car and gave the officers the drugs.

### III.   DISCUSSION

The bases for the Court's rulings on all but two of Defendant's motions are set forth in the record of the May 3, 2012, hearing. The following discussion pertains to Defendant's Rule 404(b) motion contained in his first motion in limine (Docket 19) and his second motion in limine insofar as it seeks to exclude the audio and videotape recordings (Docket 40):

> A. *Defendant's first motion in limine seeking suppression of evidence offered pursuant to Federal Rule of Evidence 404(b)*

In his first motion in limine (Docket 19), Defendant seeks suppression of any Rule 404(b) evidence. At the time he filed the motion, the United States had not provided notice of its intent to introduce any Rule 404(b) evidence. Thereafter, however, on April 27, 2012, United States filed its response to Defendant's request for Rule 404(b) notice stating that it intends to offer evidence that Ms. Cummings purchased crack cocaine from Defendant "at least two to three times a week" prior to becoming an informant.[2] (*See* Docket 44.) These transactions allegedly first began in August 2011 and continued into early January 2012. (*Id.*) The transactions ranged from $40 to

---

2    The United States' notice of its intent to offer evidence of Ms. Cummings' prior dealings with Defendant states that the counsel for the United States does not view these facts as Rule 404(b) evidence. (Docket 44.) Ostensibly, the Government provided Defendant with this advance notice just in case the Court disagreed with its assessment and ruled that the evidence was within Rule 404(b)'s scope. That decision was a wise exercise of prosecutorial judgment. For the reasons that follow, the Court agrees with the United States that this evidence is not Rule 404(b) evidence; however, given the subtleties of Rule 404(b) jurisprudence and the potential unfair prejudice such evidence poses to a defendant, the Government is prudent to err on the side of caution where such evidence is concerned.

4

$200 purchases and occurred at a number of locations, including Defendant's 1020 Temple Street home. (*Id.*) Every time she bought crack from Defendant, he was armed. (*Id.*)  When Ms. Cummings purchased crack from Defendant at his Temple Street home, Defendant had a firearm on his person and two other guns were usually laying on furniture in his living room. (*Id.*) Additionally, the United States also stated in its notice that it intends to offer evidence that, in late December 2011, Defendant assaulted Ms. Cummings with a firearm after he realized she had shorted him $20 during one of her crack cocaine purchases. (*Id.*) Defendant allegedly pointed a gun to Ms. Cummings' head and said, "Pay me or you're a dead bitch." (*Id.*) After Ms. Cummings handed over the $20, Defendant said, "Now you know."   (*Id.*)

The United States contends that this evidence is not Rule 404(b) evidence, but rather evidence that forms the context of the crime charged; alternatively, the United States, invoking the Rule 404(b)'s laundry list of possible purposes, argues that the evidence is admissible because it tends to prove Defendant's identity, knowledge, intent, motive and purpose of possessing firearms and "absence of mistake of any element of both crimes charged in the Indictment."   (Docket 47.) The United States further argues that the evidence "is also relevant to demonstrate that the CI knew the defendant and that defendant knew the CI because he sold the CI crack cocaine on a regular basis."   (*Id.* at 6.)

    *1.  Governing law*

Federal Rule of Evidence 404(b) provides:

**(b)    Crimes, Wrongs, or Other Acts**

**(1) Prohibited Uses.** Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

5

**(2) Permitted Uses**; Notice in a Criminal Case. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. On request by a defendant in a criminal case, the prosecutor must:

(A) provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and
(B) do so before trial—or during trial if the court, for good cause, excuses lack of pretrial notice.

Evidence of prior bad acts under Rule 404(b) is admissible when the following criteria are met:

(1) The evidence must be relevant to an issue, such as an element of an offense, and must not be offered to establish the general character of the defendant. In this regard, the more similar the prior act is (in terms of physical similarity or mental state) to the act being proved, the more relevant it becomes. (2) The act must be necessary in the sense that it is probative of an essential claim or an element of the offense. (3) The evidence must be reliable. And (4) the evidence's probative value must not be substantially outweighed by confusion or unfair prejudice in the sense that it tends to subordinate reason to emotion in the factfinding process.

*United States v. Johnson,* 617 F.3d 286, 296-97 (4th Cir. 2010) (citing *United States v. Queen,* 132 F.3d 991, 997 (4th Cir. 1997); *see United States v. Rawle*, 845 F.2d 1244, 1247 (4th Cir.1988).

For evidence to be relevant, it must be "sufficiently related to the charged offense." *United States v. McBride*, No. 10-5162, 2012 WL 1384487 (4th Cir. Apr. 23, 2012) (citing *Rawle*, 845 F.2d at 1247 n. 3). The more closely the prior act is related to the charged conduct in time, pattern, or state of mind, the greater the potential relevance of the prior act. *See Johnson*, 617 F.3d at 297; *see also United States v. Cabrera–Beltran*, 660 F.3d 742, 755 (4th Cir.2011) ("conduct charged in the indictment was exceedingly similar" to prior act conduct)). The "fact that a defendant may have been involved in drug activity in the past does not in and of itself

provide a sufficient nexus to the charged conduct where the prior activity is not related in time, manner, place, or pattern of conduct." *Johnson*, 617 F.3d at 297.

Noting that Rule 404(b) analysis presents a "continuing challenge" to trial courts, the Fourth Circuit recently re-examined the proper analytical framework for admission of Rule 404(b) evidence of a defendant's prior drug activity. *United States v. McBride*, No. 10-5162, 2012 WL 1384487, * 8 (4th Cir. Apr. 23, 2012) (Wilkinson dissenting). There, the Fourth Circuit reversed the district court's admission of 404(b) evidence of McBride's prior drug activity. *Id.* at *1. McBride was charged with possession of cocaine with intent to distribute, being a felon in possession of a firearm, and using and carrying a firearm in furtherance of a drug trafficking crime. *Id.* The charged offenses occurred in the parking lot of a nightclub. *Id.* at *2. At trial, the district court admitted under Rule 404(b) evidence that a confidential informant, wearing a wire and video recording device, attempted to buy crack cocaine from McBride at his home eighteen months prior to the date of the charged crimes. *Id.* at *3. McBride told the informant that he did not have any crack at that time, that his current batch was not yet ready to be sold, that he needed to contact "his man" regarding the possibility of buying some more cocaine, and that the informant should return in a few hours. *Id.*

In reversing the trial court, the Fourth Circuit began its analysis by finding that the prior conduct "plainly" fell within the ambit of 404(b) because it was not part of the same series of transactions as the events that formed the basis of the charged conduct, did not form part of the context of the crime, and was otherwise necessary to complete the story of the crime. *Id.* at *9. It then invoked the four-factor test under *Johnson*. *Id.* After finding that the evidence was reliable, the court examined the relevancy and necessity of the prior act evidence. *Id.* Noting that McBride

7

was indicted for possession of cocaine with intent to distribute relating to events that occurred at a nightclub on August 12, 2009, the court found that the informant's evidence was "unrelated in time, place, pattern, or manner to the conduct for which McBride was indicted." *Id.* at *10. The court stated that the events were separated by eighteen months' time, the charged crimes occurred in a nightclub as opposed to McBride's home, and the charged drug offense was possession with intent to distribute cocaine versus evidence of manufacturing crack cocaine. *Id.* The court emphasized that the prior act evidence

> involving McBride's attempted manufacture of crack cocaine and his expressed willingness to sell crack cocaine, bear no discernible relationship to the charge of possession of cocaine with the intent to distribute for which McBride was on trial. The government was not attempting to prove that the cocaine in McBride's possession was to be used for the manufacture of crack cocaine. The government also failed to identify any connection between the location of the January 14, 2008 transaction, McBride's residence, and the club [where the charged offenses occurred].

*Id.* Citing circuit precedent upholding admission of prior "bad act" evidence, the court emphasized that the prior evidence must have a similar factual connection or "linkage" to the charged offenses (*e.g.* cases where the same drugs are sold in similar quantities and transported in a similar manner.) *See Rawle*, 845 F.2d at 1245–46, 1248; *Cabrera–Beltran*, 660 F.3d at 755. The court stated that the Rule 404(b) evidence offered against McBride failed to establish the proper linkage. *Id.* Evidence of McBride's prior drug activity was "relevant primarily to establish McBride's character as a "drug dealer. This is the very type of evidence that the limitation imposed by Rule 404(b) was designed to exclude." *Id.* (citing *United States v. Sanders*, 964 F.2d 295, 299 (4th Cir.1992)).

The court also found that the evidence was not necessary under the *Johnson* test. Rejecting the government's argument that the evidence was necessary to prove the defendant's intent, the court stated that the CI's testimony

> was not "necessary" to establish McBride's intent regarding the events at the club. The events of January 14, 2008 did not provide any context regarding the events of August 12, 2009, and none of the charges against McBride required proof of ongoing activity in order to secure a conviction. Additionally, the government did not present a basis for concluding that [the CI's] testimony was an essential part of the crimes on trial.

As noted in *McBride*—and of particular importance here—not all prior "bad act" evidence is encompassed by Rule 404(b). Evidence of uncharged conduct arising out of the same series of transactions as the charged offense and evidence that "served to complete the story of the crime on trial," do not qualify as evidence of "other crimes" subject to scrutiny under Rule 404(b). *United States v. Kennedy*, 32 F.3d 876, 886 (4th Cir.1994)). In *Kennedy*, the trial court admitted evidence that, prior to the commencement of the federal investigation that gave rise to the charged offenses, the Baltimore police department had previously investigated Kennedy's drug activities with unindicted suppliers. Kennedy argued that admission of this evidence constituted inadmissible Rule 404(b) evidence because it preceded the charged crimes and involved unindicted individuals not involved in the charged conspiracy. In rejecting Kennedy's contention, the Fourth Circuit stated that

> the mere fact that the evidence involved activities occurring before the charged time frame of the conspiracy does not automatically transform that evidence into "other crimes" evidence . . . [E]vidence of uncharged conduct is not considered "other crimes" evidence if it arose out of the same . . . series of transaction as the charged offense, . . . or if it necessary to complete the story of the crime on trial.

*Id.* at 885 (internal quotations and citation omitted). The court reasoned that the prior investigation evidence "was not separate from and unrelated to the charged conspiracy." *Id.*

9

Rather, the evidence served to provide context to the charged drug distribution scheme, proved Kennedy's participation in drug distribution activities, and "addressed Kennedy's sources for the cocaine that he supplied to [a co-defendant] during the charged conspiracy period." *Id.* at 886. Further, this evidence furnished the "preparatory stages of the conspiracy" and, thus, served "to complete the story of the crime on trial." *Id.* Additionally, the evidence "helped the jury to understand how Kennedy's group obtained its cocaine and how that group related to and became part of the bigger [charged] conspiracy." *Id.*

### 2. Analysis

Unlike the evidence in *McBride*, evidence of Ms. Cummings' prior drug transactions with Defendant is not "separate from and unrelated to" the charged offense, but rather arose out of the same series of transactions as the offense charged, that is, distribution of crack cocaine. It is inaccurate to characterize this evidence as "similar" in nature because it is the *same* as the conduct charged in the indictment, that is, it is the same conduct (distribution) involving the same drug (crack cocaine) and the same participants (Ms. Cummings and Defendant) and, at least on some occasions, the same location (Defendant's Temple Street home). Moreover, the proffered evidence began just a few months prior to the crime charged in Count Two and continued on a regular basis until shortly before the crime charged in Count Two. As such, the evidence bears a particularly probative temporal relationship to the offense alleged. Like the facts in *Kennedy*, Ms. Cummings' evidence, if believed, provides context to the charged crimes in that it will, among other things, assist the jury in understanding why Defendant needed no introduction to Ms. Cummings when she telephoned Defendant to set up the buy. As such, the evidence does not fall

10

within Rule 404(b)'s ambit and is independently admissible under Federal Rules of Evidence 401 and 402.

Alternatively, even if the evidence constituted "other crimes" evidence under Rule 404(b), the evidence is relevant and admissible to demonstrate Defendant's intent and motive for his knowing possession of firearms and crack cocaine. It also may tend to prove Defendant's identity, especially if the defense is that Ms. Cummings duped the police and interacted with some other person during the January 18, 2012, controlled buy. Unlike the "other crimes" evidence in *McBride*, here evidence of Defendant's alleged prior drug deals with Ms. Cummings share a similar logical connection or "linkage" to the charged offenses, that is, the evidence is related in time, place, pattern, and manner to the conduct for which Defendant was indicted. Thus, assuming for the sake of discussion that this evidence is more properly deemed Rule 404(b) evidence, it would be readily admissible under that rule.

In addition to the evidence that Ms. Cummings regularly bought crack cocaine from Defendant prior to working as an informant, the United States intends to offer evidence that on one occasion Defendant threatened Ms. Cummings with a firearm after she shorted him $20. This incident allegedly occurred in late December 2011, about three weeks prior to the incident charged in Count Two. This conduct is not properly considered "other crimes" evidence because it, too, as proffered, arose out of the same series of transactions as the charged offense. And even if this evidence were deemed "other crime" evidence under Rule 404(b), it would nonetheless be admissible under that rule for several probative purposes. For example, it would tend to prove Defendant's intent and motive for unlawfully possessing firearms (an offense specifically charged in Count One), his method and planning for his drug distribution activities, and, again, in the event

11

Ms. Cummings' identification of Defendant is tested at trial, the evidence would also tend to prove Defendant's identity. While this alleged conduct is violent in nature, its probative value is significant and is not substantially outweighed by unfair prejudice in the sense that it would tend to subordinate reason to emotion in the fact-finding process.

Accordingly, Defendant's first motion in limine, insofar as it seeks exclusion of Ms. Cumming's evidence of her purchases of crack cocaine in the months prior to becoming a police informant, is **DENIED**.

> B. *Defendant's second motion in limine seeking exclusion of audio and videotape recordings relating the January 18, 2012, controlled buy alleged in Count Two*

In his second motion in limine (Docket 40), Defendant seeks to exclude the audio and video recordings relating to the January 18, 2012, controlled buy. Defendant contends that copies of the recordings "cannot be consistently heard or seen by natural senses" and "[a]t no time is any audible reference made to Mr. Garrett; at no time is any discernible exemplar of his voice recorded; and at no time does his face or any image of him appear on the video created with the controlled buy." (Docket 40 at 1-2.) Defendant contends the video "is of very poor quality" and "fails to show any drug deal, hand to hand exchange, or any crime at all." (*Id.* at 2.)

The United States responds that it will authenticate the recordings at trial and that any "quality issue" concerning the recordings is a matter of weight of the evidence and not admissibility. (Docket 48 at 1-2.)

At the May 3, 2012, hearing, the parties tendered copies of the two recordings in question to the Court for its *in camera* inspection. The first recording is an audio recording that purports to be a January 18, 2012, telephone call made by Ms. Cummings to Defendant. The second recording was made with a video and audio recording device hidden in Ms. Cummings' clothing.

12

The recording purports to record Ms. Cummings' controlled purchase of crack cocaine from Defendant on January 18, 2012.

The admissibility of a tape recording rests within the sound discretion of the trial court. *United States v. Capers,* 61 F.3d 1100, 1106 (4th Cir. 1995). Before any item of documentary evidence is admitted, the proponent of that evidence must lay an adequate foundation for its admission. Fed. R. Evid. 901(a); *United States v. Wilson,* 115 F.3d 1185, 1188–89 (4th Cir. 1997). That foundation must establish that the recording is an authentic and true representation of what it purports to have recorded, including an identification of the voices on the recording. *See* Fed. R. Evid. 901(b)(5).

Where a defendant, as here, challenges the admissibility of a recording on the grounds that it is inaudible, that argument is properly analyzed under Federal Rule of Evidence 403. *United States v. Willie*, 308 F. Supp. 2d 724, 725 (E.D. Va. 2004). "[P]oor quality and partial unintelligibility do not render tapes inadmissible unless the unintelligible portions are so substantial as to render the recording as a whole untrustworthy." *United States v. Stone,* 960 F.2d 426, 436 (5th Cir.1992). The determination of trustworthiness of a tape recording is left to the sound discretion of the trial judge. *Id.*; *see United States v. Hall,* 342 F.2d 849, 853 (4th Cir. 1965) (affirming district court's admission of a tape recorded conversation between the defendant and an undercover agent where as much as twenty-five percent of the taped conversation was inaudible, but where the portion of the tape relating to the offer and acceptance of a bribe was clear and audible).

The Court has reviewed the two recordings. The telephone recording is brief, just over a minute in duration, and is almost entirely audible. The call is monitored by law enforcement

13


officers who specifically state the phone number that is dialed. A male, alleged to be Defendant, answers the phone. The substance of the conversation is a discussion about where Ms. Cummings and Defendant will meet. Defendant correctly states that there is no reference to Defendant's identity during the telephone conversation; however, if the recording is properly authenticated at trial, the question whether Defendant was the person Ms. Cummings spoke with is a matter of the weight of the evidence, not its admissibility.

The video recording is approximately nine minutes in length. All but thirty seconds of the recording is largely unhelpful footage of the inside of Ms. Cummings' sweatshirt as she is walking to and from her meeting with the individual alleged to be Defendant. Because the video camera is kept inside a pocket or is otherwise blocked by Ms. Cummings' sweatshirt, there is no video footage of Defendant or of the drug transaction. The audio portion of the alleged drug transaction, however, is mostly audible. Ms. Cummings calls out, presumably as she approaches Defendant, "What are you doing, handsome?" She is then, presumably, shown some crack cocaine and is heard questioning whether the quantity was correct. The two use street slang. The male is heard assuring her that the quantity was "two fifties" and he makes comments indicating the drugs were of good quality. Ms. Cummings, presumably, accepts the drugs and tells the male that she will be calling him. The transaction lasts no more than thirty seconds.

Based on this evidence, the Court finds that any partial unintelligibility is insubstantial and does not render the recording as a whole untrustworthy. Unrelated to issues of audibility is the additional issue that Ms. Cummings and her drug source converse in street slang. Presumably, testimony of Ms. Cummings and the police officers who monitored the transaction will lend clarity to those parts of the recording that are difficult to discern either because of inaudibility or the use

of street slang. These witnesses should be available to Defendant for cross-examination on these issues as well as the failure of the evidence to capture Defendant's image.

Accordingly, Defendant's second motion in limine insofar as it seeks to exclude the audio and videotape recordings on the grounds of inaudibility is **DENIED.**

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

ENTER: June 21, 2012

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE